Robert A. Krause; krause@spencelawyers.com
Mel C. Orchard, III; orchard@spencelawyers.com
Elizabeth A. Richards; richards@spencelawyers.com
THE SPENCE LAW FIRM, LLC
15 S. Jackson Street, P.O. Box 548
Jackson, Wyoming 83001
(307) 733-7290
(307) 733-5248 Fax

Attorneys for Plaintiff

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2014 AUG 15　AM 10 58

STEPHAN HARRIS, CLERK
CHEYENNE

# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF WYOMING

| | |
|---|---|
| MICHELLE OLIVER,<br><br>　　Plaintiff,<br><br>v.<br><br>HEALTHTECH MANAGEMENT SERVICES, INC., and WILLIAM D. PATTEN,<br><br>　　Defendants. | Civil No. 14CV168-S<br><br>**COMPLAINT & JURY DEMAND** |

Plaintiff, by and through her attorneys, Robert A. Krause, Mel C. Orchard, III and Elizabeth A. Richards of The Spence Law Firm, LLC, pleads and alleges her causes of action against the Defendants as follows:

## PARTIES

1. Michelle Oliver is a resident of the State of Montana who is a citizen of Montana for the purpose of determining diversity.

2. William Patten is a resident of the State of Wyoming who is a citizen of Wyoming for the purpose of determining diversity.

3. HealthTech Management Services, Inc. (HealthTech), is an Oregon Corporation with its business headquarters and principal place of business in the State of Tennessee, and it is doing business in the State of Wyoming. HealthTech is a citizen of Oregon and Tennessee for the purpose of determining diversity. The name and address of its registered agent in Wyoming is Corporation Service Company, 1821 Logan Ave., Cheyenne, Wyoming 82001.

4. Under the doctrine of *respondeat superior*, HealthTech is vicariously liable for any act or omission of an officer, agent, servant or employee made while acting in the scope of authority delegated by the company, or within the scope of the duties of the employee, which were the direct and proximate cause of the injuries and the resulting damages alleged herein.

5. Because for at least a portion of the time and place of the events described herein William Patten was, on information and belief, acting as an officer, agent, servant and/or employee of HealthTech, working within the scope of his employment or agency, to further the interests of HealthTech, HealthTech is vicariously liable for William Patten's negligent acts and omissions.

6. Oliver does not believe that the claims against William Patten and HealthTech asserted herein are subject to the Wyoming Medical Review Panel Act of 2005, Wyo. Stat. Ann. §§ 9-2-1513 through 9-2-1523, in that neither defendant is a "health care provider" as that term is defined in Wyo. Stat. Ann. § 9-2-1515(a).

7. Nevertheless, to the extent she was required to do so, Oliver complied with the Wyoming Medical Review Panel Act of 2005. Out of an abundance of caution, on August 11, 2014, Plaintiff filed an Application for Claim Review with the

Wyoming Medical Review Panel (MRP) for claims against HealthTech and other individuals and entities. The Director of the MRP has not yet signed an Order of Dismissal.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the suit is between citizens of different states, and the amount in controversy of each claim exceeds seventy-five thousand dollars ($75,000) exclusive of interest and costs.

9. Pursuant to 28 U.S.C. §1391(a), proper venue for this action is the United States District Court for the District of Wyoming because a substantial part of the events or omissions giving rise to the claims occurred within the District of Wyoming.

## STATEMENT OF FACTS

10. On July 20, 2012, Michelle Oliver suffered a work-related trauma to her left knee.

11. Dr. Jeffrey Hansen, an employee of Powell Valley Healthcare, Inc. (PVHC), evaluated Oliver's injury, and performed a left ACL reconstruction on August 21, 2012.

12. Following the surgery, Oliver experienced pain and still had very limited movement in her knee.

13. Dr. Hansen performed two additional procedures, on March 5, 2013 and on April 30, 2013, but Oliver's pain and limited movement persistent.

14. Eventually, a specialist performed a left ACL reconstruction on October 4, 2013, to repair the damage caused by Dr. Hansen's surgery.

15. Oliver has improved since this surgery, although she has been told that due to bone damage she will likely need a full knee replacement in the near future.

16. Oliver's injuries were caused, in part, by the negligent conduct of Dr. Hansen.

17. Specifically, on August 21, 2012, Dr. Hansen performed an ACL reconstruction, partial medial menisectomy and lateral meniscus repair on Oliver.

18. Dr. Hansen's surgical actions fell below the standard of care in that the femoral tunnel placement of his graft was grossly inappropriate, resulting in graft failure and continued knee instability.

19. This instability contributed materially to the development of arthrofibrosis and continued degenerative changes to the knee.

20. Consequently, several additional surgical interventions were necessary, and, ultimately, a complete anterior reconstruction was required.

21. Dr. Hansen's duty of care owed to Oliver was breached through Dr. Hansen's negligent acts and omissions.

22. As a direct and proximate result of Dr. Hansen's negligent acts and omissions, Oliver sustained serious physical and emotional injuries, including, but not limited to, a botched ACL reconstruction necessitating additional surgery, rehabilitation and the risk of full knee replacement.

23. Dr. Hansen's negligence occurred at the facilities of PVHC, in Powell, Wyoming.

24. Dr. Hansen became employed by PVHC in 2006.

25. In 2006, PVHC had a management services contract with Brim Healthcare, Inc. (Brim) under which Brim provided a CEO, along with management and other services described in the contract to assist PVHC in operating PVHC's facilities.

26. Under that contract, Brim agreed to provide, and did provide, a CEO to oversee the recruitment, hiring, discharge, supervision, discipline and management of PVHC employees, including employed physicians such as Dr. Hansen.

27. In 2006, at the time Dr. Hansen became employed by PVHC and received medical staff privileges at PVHC, Rod Barton was the CEO of PVHC.

28. In 2006, PVHC's facilities were operated by PVHC, and also by Brim.

29. On information and belief, HealthTech purchased Brim in 2010.

30. On information and belief, HealthTech assumed liability for Brim, its agents, employees or servants such that HealthTech is liable for the acts and omissions of Brim's agents, employees or servants who worked at or provided any services to PVHC.

31. As of 2010, PVHC's facilities are operated by PVHC, and also by HealthTech.

32. In 2010, PVHC entered into a management services contract with HealthTech, under which HealthTech provided a CEO, along with management and other services described in the contract to assist PVHC in operating PVHC's facilities.

33. HealthTech agreed to provide, and did provide, a CEO to oversee the recruitment, hiring, discharge, supervision, discipline and management of PVHC employees, including employed physicians such as Dr. Hansen.

34. In February 2012, William Patten became the CEO of PVHC.

35. Prior to the events giving rise to this case, Patten and HealthTech became aware of complaints that Dr. Hansen was not competent to perform the procedures for which he was granted privileges.

36. Prior to the events giving rise to this case, Patten and HealthTech were aware of complaints made by patients and other healthcare providers about Dr. Hansen's competency.

37. Prior to the events giving rise to this case, Patten and HealthTech were aware of Dr. Hansen's rate of surgical complications, and his failure to conform to the standards of care applicable to orthopedic surgeons.

38. Nevertheless, on information and belief, Patten and HealthTech either failed to take steps, or took insufficient steps, to investigate, oversee and monitor Dr. Hansen's performance to ensure patient safety.

39. As a direct and proximate result of the acts and omissions of Patten and HealthTech, Oliver sustained serious physical and emotional injuries, including, but not limited to, a botched ACL reconstruction necessitating additional surgery, rehabilitation and the risk of full knee replacement.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

40. Plaintiff incorporates and adopts by reference all the facts and allegations above as though fully set forth herein.

41. At the time and the place of the events herein, Patten and HealthTech owed a duty of reasonable care to medical patients, including Oliver, to avoid causing her injury.

42. At the time and the place of the events described herein, Patten and HealthTech owed a duty of reasonable care to medical patients, including Oliver, to properly grant, extend, and continue medical staff privileges to physicians, including Dr. Hansen.

43. At the time and the place of the events described herein, Patten and HealthTech owed a duty of reasonable care to medical patients, including Oliver, to maintain adequate supervision, oversight and review of the treatment rendered by Dr. Hansen.

44. Patten and HealthTech were negligent in credentialing, hiring, supervising, disciplining, monitoring, reviewing, training, and extending privileges to Dr. Hansen, and such negligence breached the duties of care owed by Patten and HealthTech to Oliver.

45. The negligence of Patten and HealthTech includes, but is not limited to, the following:

    a. Negligently failing to properly exercise their authority in granting, extending and continuing medical staff privileges to Dr. Hansen;

    b. Negligently failing to supervise and review Dr. Hansen's exercise of his medical staff privileges;

    c. Negligently misleading patients, including Oliver, into believing that Dr. Hansen was a suitable and competent physician;

    d. Negligently failing to modify and/or terminate the medical staff privileges granted to Dr. Hansen based upon his failure to provide appropriate patient care;

    e. Negligently failing to protect patients, including Oliver, from obtaining care from Dr. Hansen based upon information known to him about his credentials, training, experience, suitability and abilities;

 f. Negligently failing to investigate Dr. Hansen's surgical practices and post-surgical care;

 g. Negligently failing to adopt and enforce bylaws, policies and procedures sufficient for providing quality and safe health care to patients; and

 h. Negligently failing to act reasonably under the circumstances.

46. As a direct and proximate result of the negligence of Patten and HealthTech, Oliver suffered the serious injuries set forth above, and in the "Damages" section of this Complaint.

## DAMAGES

47. Plaintiff incorporates and adopts by reference all the facts and allegations above as though fully set forth herein.

48. As a direct result of the negligent acts and omissions set forth herein, Oliver is entitled to be compensated and to recover the following damages:

 a. Past and future physical pain and suffering in an amount to be proven at trial;

 b. Past and future emotional pain and suffering in an amount to be proven at trial;

 c. Past and future loss of enjoyment of life in an amount to be proven at trial;

 d. Past and future disability in and amount to be proven at trial;

 e. Past and future loss of wages, income and earning capacity in an amount to be proven at trial;

 f. Other past and future pecuniary loss in an amount to be proven at trial;

g. Past and future medical and related expenses in an amount to be proven at trial;

h. All allowable costs, expense and fees associated with this litigation; and

i. Plaintiff reserves the right, if demonstrated by the evidence, to assert a claim for punitive damages as is fair and just.

WHEREFORE, Plaintiff prays that the Court enter judgment against the Defendants in an amount supported by the allegations of this Complaint, as follows:

1. Judgment against the defendants for general damages in an amount consistent with the allegations contained herein and to be proven at trial; and

2. Judgment against the defendants for special damages in an amount consistent with the allegations contained herein and to be proven at trial; and

3. Judgment for costs, interests, and such other and further relief as this Court deems just and equitable.

DATED this 14th day of August, 2014.

_____
Robert A. Krause
Mel C. Orchard, III
Elizabeth A. Richards
THE SPENCE LAW FIRM, LLC
15 S. Jackson Street, P.O. Box 548
Jackson, Wyoming 83001
(307) 733-7290

Attorneys for the Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff, by and through counsel and pursuant to Federal Rule of Civil Procedure 38, hereby requests that this matter be tried to a jury of six and submits the requisite fee herewith.

DATED this 14th day of August, 2014.

_____
Robert A. Krause