Paul Kapp #5-2267
George E. Powers, Jr., WSB #5-2062
Sundahl, Powers, Kapp & Martin, LLC
1725 Carey Avenue
P.O. Box 328
Cheyenne, Wyoming 82003
(307) 632-6421 telephone
*Attorney for Defendants HealthTech*
*and William D. Patten*

## UNITED STATES DISTRICT COURT

## DISTRICT OF WYOMING

| | | |
|---|---|---|
| MICHELLE OLIVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No. 14-CV-168-S |
| | ) | |
| HEALTHTECH MANAGEMENT | ) | |
| SERVICES, INC., WILLIAM D. PATTEN, | ) | |
| JEFFREY HANSEN, M.D., and POWELL | ) | |
| VALLEY HEALTH CARE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OF DEFENDANTS HEALTHTECH MANAGEMENT SERVICES, INC., AND WILLIAM D. PATTEN

COME NOW the Defendants, HealthTech Management Services, Inc. ("HealthTech") and William D. Patten ("Patten"), by and through their attorneys, Sundahl, Powers, Kapp & Martin, LLC, and hereby submit the following Memorandum of Law in Support of Motion to Dismiss Plaintiff's Amended Complaint.

## I.    INTRODUCTION:

The claims against HealthTech and Patten in Plaintiff's Amended Complaint (Doc. 22) should be dismissed. Plaintiff, Michelle Oliver, claims that she was the victim of medical malpractice committed by Jeffrey Hansen, M.D. ("Hansen"). She has sued Hansen, alleging that

he negligently treated her for a knee injury in 2012 and 2013.  She has also sued Powell Valley Health Care, Inc. ("PVHC"), alleging that PVHC is vicariously liable as the employer of Hansen and that PVHC is liable for negligently credentialing, hiring, supervising, disciplining, monitoring, reviewing, training and extending privileges to Hansen.  Finally, she has sued HealthTech and Patten, alleging that HealthTech and Patten had assumed duties to monitor, review and oversee the credentialing, supervising, disciplining, monitoring, reviewing, training and extending privileges to Hansen under the terms of a 2010 contract between HealthTech and PVHC (the "Contract").   However, Plaintiff's claims against HealthTech and Patten are contradicted by the plain language of the Contract itself.

The Contract clearly and unambiguously states "that [HealthTech's] supervisory and management authority **shall not extend to any aspect of such employees' professional medical judgment or medical actions**."   *See Contract, Exhibit A at ¶ 1.2.1 (emphasis supplied).  See also ¶¶ 3.1. and 3.2. (Note: A copy of the contract has been attached as Exhibit A to the Motion to Dismiss.).*  PVHC expressly reserved the authority to credential, supervise, discipline, monitor, review, train and extend privileges to Hansen.  That power was not delegated to HealthTech or Patten.   Moreover, the plain language of that Contract clearly and expressly places the responsibility for medical judgments on PVHC and further states "[HealthTech], its employees, and contractors **shall have no responsibility, control over, or liability whatsoever for such medical judgments** and [HealthTech] **shall not in any way be responsible for the credentialing of any healthcare professionals** on staff at the Hospital." *Id. at ¶ 3.2 (emphasis supplied).*

Where the terms of the Contract state that neither HealthTech nor Patten had any duty to supervise or manage the professional judgment or medical practice of hospital employees, such

as Hansen, Plaintiff cannot rely upon bare, conclusory allegations to establish a legal duty. Such conclusions are not a substitute for well-pleaded facts and, since there are no well-pleaded allegations of fact that would support any legal claims against HealthTech or Patten under common law, statute or contract, the claims against HealthTech and Patten in the Amended Complaint cannot be sustained and should be dismissed.[1]

## II.    SUMMARY OF MATERIAL ALLEGATIONS AND FACTS

For the purposes of this motion, the relevant allegations and facts are those well-pleaded facts contained in the Amended Complaint (Doc. 22) and the terms of the Contract between HealthTech and PVHC, which Plaintiff has cited and identified in her Amended Complaint. *Amended Complaint at ¶ 45.* As noted earlier, a copy of the Contract between HealthTech and PVHC has been attached and identified as Exhibit A to Defendants' Motion to Dismiss. Briefly summarized these documents contain the following relevant factual allegations and contractual terms.

### A.    The Amended Complaint

The Amended Complaint begins by identifying the various parties and summarizing various "jurisdictional" facts. Plaintiff specifically alleges that Patten is an employee of HealthTech. *Amended Complaint at ¶ 5.* She also specifically alleges that Hansen is an employee of PVHC. *Amended Complaint at ¶ 9.* Plaintiff goes on to make the following allegations:

---

[1] The Court may also take judicial notice of a January 14, 2015 decision by the Wyoming District Court for the Fifth Judicial District in the case of *Stambaugh v HealthTech Management Services, Inc., et al*, Park County Civil No. 27758, which granted HealthTech's motion to dismiss a similar complaint alleging claims for failure to supervise and credential Hansen because the allegations conflicted with the plain and unambiguous language of the same Contract. *See Exhibit B attached to Motion to Dismiss.*

- Plaintiff suffered a knee injury and was treated surgically by Hansen on August 21, 2012, March 5, 2013 and April 30, 2013.  Plaintiff has also had additional surgery performed by another specialist on October 4, 2013 to repair damages caused by Hansen's surgeries. *Amended Complaint at ¶¶ 23-27.*

- Plaintiff's injuries were caused by the negligence of Hansen, whose surgical care fell below the standard of care.  Hansen's actions have contributed to or caused conditions that have required and will require further treatment. *Amended Complaint at ¶¶ 29-35.*

- Hansen's actions occurred at the facilities of PVHC and while he was employed by PVHC. *Amended Complaint at ¶¶ 36-37.*

- In 2006 PVHC contracted with Brim Healthcare, Inc., to provide PVHC with a person, who would serve as the Chief Executive Officer ("CEO") of PVHC. *Amended Complaint at ¶¶ 38-41.*

- HealthTech purchased Brim in 2010 and entered into the Contract to provide PVHC with a CEO. *Amended Complaint at ¶¶ 42-46.*[2]  Plaintiff alleges that under the terms of the Contract "HealthTech provided a CEO, along with management and other services described in the contract to assist PVHC in operating PVHC's facilities." *Amended Complaint at ¶ 45.*  She further alleges that HealthTech provided a CEO "to oversee the recruitment, hiring, discharge, supervision, discipline and management of PVHC employees, including employed physicians such as Dr. Hansen." *Amended Complaint at ¶ 46.*

- Patten became CEO of PVHC in February 2012. *Amended Complaint at ¶ 47.*

---

[2] The 2010 "contract" referred to in the Amended Complaint is the "Contract," as defined above, and a copy of the Contract is attached to the Motion to Dismiss as Exhibit A.

- Prior to the events giving rise to this claim HealthTech, Patten and PVHC were aware of complaints and other issues regarding Hansen's medical care of patients at PVHC, but nevertheless failed to take steps to investigate, oversee or monitor his performance. *Amended Complaint at ¶¶ 48-51.*

- Plaintiff's injuries were proximately caused by the acts and omissions of HealthTech, Patten, PVHC and Hansen. *Amended Complaint at ¶ 52.*

Based on these alleged facts, Plaintiff asserts causes of action, which may be summarized as follows:

- Plaintiff's First Cause of Action asserts claims against Hansen and PVHC. Plaintiff alleges a claim for medical negligence against Hansen and a claim for vicarious liability against PVHC as the employer of Hansen. *Amended Complaint at ¶¶ 53-56.*

- Plaintiff's Second Cause of Action asserts an additional claim against PVHC based on PVHC's alleged negligence in credentialing, supervising, disciplining, monitoring, reviewing, training and extending privileges to Hansen. *Amended Complaint at ¶¶ 57-63.*

- Plaintiff's Third Cause of Action is the only claim against HealthTech and Patten. This claim mirrors the prior claim asserted against PVHC in the Second Cause of Action. Plaintiff alleges that HealthTech and Patten had duties of reasonable care to patients at PVHC, including Oliver, to avoid causing injury, "to properly grant, extend, and continue medical staff privileges to physicians," and "to maintain adequate supervision, oversight and review of the treatment rendered by Dr. Hansen." *Amended Complaint at ¶¶ 64-67.* Plaintiff alleges that HealthTech and

Patten were both negligent in credentialing, hiring, supervising, disciplining, monitoring, reviewing, training and extending privileges to Hansen and that this negligence was a proximate cause of her injuries at the hands of Hansen. *Amended Complaint at ¶¶ 68-70.*

## B.   The Terms of the HealthTech/PVHC Contract

Federal courts have long followed a rule that allows a court to consider documents attached to or identified in a complaint, when ruling on motions under Federal Rule of Civil Procedure 12(b)(6). "[A] document central to the plaintiff's claim may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute." *Utah Gospel Mission v Salt Lake City Corp*, 425 F.3d 1249, 1253-4 (10th Cir. 2005), *and cases cited therein.* Moreover, the document does not need to be attached to the complaint, if it is identified with specificity and is central to the claim and if the accuracy of the copy placed before the court is not in dispute. "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corporation v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).

When considering the sufficiency of claims based on such documents, the Court must consider and give effect to the terms of the writing itself in determining whether plaintiff has stated a cause of action under Rule 12. Allegations that conflict with the terms of the document will not satisfy a plaintiff's obligation to present a claim supported by well-pleaded facts.

When considering motions to dismiss pleadings to which other writings are attached and incorporated therein by reference, this court has said, "**The motion to dismiss admitted all facts well pleaded, but it did not admit the legal effect ascribed by the pleader to the writing.** The writing was attached to

the first amended complaint as an exhibit and **its legal effect is to be determined by its terms rather than by the allegations of the pleader**."

*Droppleman v. Horsley*, 372 F.2d 249, 250 (10th Cir. 1967) (emphasis added), quoting *Zeligson v. Hartman-Blair, Inc.*, 126 F.2d 595, 597 (10th Cir. 1942). "[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers, supra*, 130 F.3d at 1385. Accordingly this Court can and should carefully consider the limited role that HealthTech assumed under the terms of the Contract and may disregard any conclusory allegations, which conflict with the plain terms of the Contract itself.

The Amended Complaint specifically references the 2010 Contract between HealthTech and PVHC. *Amended Complaint at ¶¶ 45 and 46.* Plaintiff alleges that under the terms of this Contract HealthTech "agreed to provide, and did provide, a CEO to oversee the recruitment, hiring, discharge, supervision, discipline and management of PVHC employees, including employed physicians such as Dr. Hansen." *Amended Complaint at ¶ 46.* Patten was one of the CEOs that HealthTech provided to PVHC under the terms of the Contract. *Amended Complaint at ¶ 47.* Plaintiff's claims against HealthTech and Patten rest on the allegation that HealthTech and Patten violated duties that were allegedly assumed under this Contract. *Amended Complaint at ¶¶ 65-69.* Accordingly, this Court can consider the terms of that Contract and determine the nature and scope of any duties HealthTech and Hansen had under the terms of that Contract in ruling on this Motion to Dismiss.

The claims asserted against HealthTech and Patten are nothing less than an attempt to hold HealthTech and Patten responsible for the decisions that PVHC made in the course of credentialing, monitoring, supervising and overseeing the medical practice of Hansen. However, neither HealthTech nor Patten assumed any such responsibility under the terms of the Contract.

Under Article I of the Contract, HealthTech was authorized only to exercise "the **reasonable business judgment** of a hospital management company in the discharge of duties hereunder, including supervision and effective management of the **day-to-day business operations** of Hospital through the CEO." *Contract, Exhibit A at ¶ 1.2 (emphasis supplied)*. "Any powers not specifically delegated or granted by the Board to [HealthTech] will remain with the Board." *Id*. Moreover, in defining the scope of HealthTech's authority over PVHC's employees the Contract expressly states "that **[HealthTech's] supervisory and management authority shall not extend to any aspect of such employees' professional medical judgment or medical actions**." *Contract, Exhibit A at ¶ 1.2.1(a) (emphasis supplied)*.

The division of authority and responsibility relating to credentialing, quality assurance and matters related to the medical judgment exercised by PVHC employees are further spelled out in Article III of the Contract. Once again the Contract provides that the Board retained full authority over and ultimate control of PVHC. *Contract, Exhibit A at ¶ 3.1*. Moreover, with respect to the "Medical Staff; Medical and Professional Matters," the Contract provides:

> Hospital's medical staff shall be organized and shall function according to the medical staff bylaws and the laws and regulations of the State of Wyoming, as they may be amended from time to time. [HealthTech] shall consult with the medical staff and the Board, as may from time to time be appropriate, with respect to issues relevant to the medical staff. **All matters requiring professional medical judgment shall remain the sole responsibility of Hospital's medical staff, nurses, and allied health professionals. [HealthTech], its employees, and contractors shall have no responsibility, control over, or liability whatsoever for such medical judgments and [HealthTech] shall not in any way be responsible for the credentialing of any healthcare professionals on staff at the Hospital.** [HealthTech] may rely on the recommendations of the Hospital's medical staff and its designated committees and department chairmen relative to the quality of professional services provided by individuals with clinical privileges and on recommendations of the Board and medical staff or any jointly appointed or Board appointed committee or representative as to the adequacy and proper state of repair of all medical equipment and the professional competency, training and requisite supervision of nurses, medical technicians, and other allied health professionals and medical staff.

*Contract, Exhibit A at ¶ 3.2 (emphasis added).*  This provision clearly states that HealthTech and its employees will not have any responsibility for the management of the PVHC medical staff or for the exercise of medical judgment by any member of that medical staff.  First, the medical staff is organized and functions according to the hospital's bylaws and the laws of Wyoming. Second, with respect to the medical judgments of physicians the Contract simply states "**[a]ll matters requiring professional medical judgment shall remain the sole responsibility of Hospital's medical staff, nurses, and allied health professionals**." *Id. (emphasis supplied).* Third, neither HealthTech, nor its employees are to have any responsibility, control or liability for those judgments or for credentialing the healthcare professionals on staff at PVHC.  Fourth, HealthTech is entitled to rely upon the recommendations of PVHC's medical staff, committees and departments regarding the quality of professional services and the adequacy of the competency, training and supervision of the medical staff.

Under the terms of the Contract the responsibility to oversee, monitor and supervise the medical practice, medical judgment and credentialing of the PVHC medical staff rested solely with PVHC and not with HealthTech or Patten.  HealthTech and Patten were not responsible for the professional judgments of the medical staff or for the hospital's decisions regarding credentialing, competency, training or supervision of the medical staff.  In short, under the terms of the Contract, HealthTech and/or Patten had no authority to oversee Hansen's practice of medicine.  That authority was specifically reserved by the PVHC Board and its designated committees and department chairmen.  *Id.*  Plaintiff has identified and cited this Contract in her Amended Complaint, but the terms of the Contract directly refute any inference that HealthTech or Patten had any of the legal duties that she asserts in support of her claims.  Accordingly, this Court can and should disregard those allegations, which are contradicted by the terms of the

Contract. "[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers, supra*, 130 F.3d at 1385. A plaintiff cannot assert a claim allegedly based upon a duty created by contract, when the terms of the contract clearly state that no such duty exists. *Rehnberg v. Hirsberg*, 2003 WY 21, 64 P.3d 115, 120 (Wyo. 2003).

### III.   STANDARD OF REVIEW

The Supreme Court has summarized rules to guide a District Court in determining whether or not a complaint can withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Atlantic Bell Corp. v Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted).   The Supreme Court subsequently elaborated on the proper application of these principles.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Twombly, supra,* 550 U.S] at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (brackets omitted).

> Two working principles underlie our decision in *Twombly*. First, **the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.** *Id.*, at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, **only a complaint that states a plausible claim for relief survives a motion to dismiss.** *Id.*, at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But **where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not "show[n]"--"that the pleader is entitled to relief."** Fed. Rule Civ. Proc. 8(a)(2).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (emphasis supplied).

IV.   **ARGUMENT**

A.   **Plaintiff has not alleged any factual basis to support her claims that HealthTech and/or Patten owed her a legal duty.**

Plaintiff's claim against HealthTech and Patten rests on a claim of negligence. The elements of a claim for negligence under Wyoming law are well established. "A plaintiff must prove: 1) the defendant was under a duty of care to protect the plaintiff from injury or loss; 2) the defendant breached the duty owed to the plaintiff; 3) the plaintiff suffered actual injury or loss; and 4) the defendant's breach of the duty proximately caused the plaintiffs injury or loss." *Sorenson v. State Farm Auto Insurance Company*, 2010 WY 101, 234 P.3d 1233, 1236 (Wyo. 2010). "The question of whether a duty exists and, if so, the scope of the duty is a question of law for the court. Absent a duty, there is no actionable negligence claim. A duty may arise by contract, statute or the common law." *Id.* (citations omitted). If the complaint fails to allege

facts that would support a finding of legal duty, then it does not state a claim under Wyoming law and should be dismissed. *Daniels v. Carpenter*, 2003 WY 11, 62 P.3d 555, 564 (Wyo. 2003). *See Jones v. Bass*, 343 F.Supp.2d 1066, 1069-70 (D.Wyo. 2004), (negligence claims under Wyoming law shall be dismissed in the absence of any factual allegation to support any alleged conclusion that defendant owed a duty to plaintiff), *aff'd* 149 Fed Appx. 764 (10th Cir. 2005).

The negligence claims against HealthTech and Patten rest upon allegations – albeit conclusory allegations – that these Defendants owed Plaintiff a duty to somehow prevent Dr. Hansen from negligently injuring the Plaintiff. Plaintiff's efforts to articulate this duty boil down to her allegations that HealthTech and Patten owed her a) a duty to "avoid causing injury," b) a duty to "properly grant, extend, and continue medical staff privileges to physicians" and c) a duty to "maintain adequate supervision, oversight and review of the treatment rendered by Dr. Hansen." *Amended Complaint at ¶¶ 64-67.* However, there are no well-pleaded facts to support these bare conclusions. Plaintiff cites the Contract, but the terms of the Contract contradict and refute her claim. There are no other allegations that could satisfy Plaintiff's duty to plead "**factual content** that allows the court to draw the reasonable inference that any such duties exist. *See Ashcroft v. Iqbal, supra*, 556 U.S. at 678-79 (emphasis supplied). There are no factual allegations to support any claim that HealthTech or Patten owed Plaintiff any duty under common law, under statute or under contract to oversee, monitor, credential or supervise the medical care or medical judgment rendered by Dr. Hansen. In fact, the plain language of the Contract identified and cited in Plaintiff's Amended Complaint specifically states that neither HealthTech nor Patten has any authority or responsibility for such matters. Therefore HealthTech and Patten should be dismissed from this action.

1.    No Common Law Duty Exists

First, there are no factual allegations to support any claim that HealthTech or Patten owed any duty to Plaintiff under the common law of Wyoming.  Moreover, there is no such common law duty of supervision over the medical practice of a physician that would apply to HealthTech or Patten.

Wyoming has recognized that hospitals have a common law duty to "exercise that degree of care and skill usually exercised or maintained by other reputable hospitals in the extension and continuation of medical staff privileges to physicians." *Greenwood v Wierdsma*, 741 P.2d 1079, 1088 (Wyo. 1987). The Supreme Court has long held that "[a] hospital board of trustees has the power to make reasonable rules and regulations defining the conditions under which physicians might avail themselves of the facilities of the hospital." *Garrison v. Board of Trustees of Memorial Hospital of Laramie County*, 795 P.2d 190, 193 (Wyo. 1990), citing *Board of Trustees of Memorial Hospital of Sheridan County v. Pratt*, 72 Wyo. 120, 262 P.2d 682, 688-89 (1953). Hospitals also have a duty to supervise and review the treatment of patients by staff physicians. *Sharsmith v. Hill*, 764 P.2d 667, 673 (Wyo. 1988) However, as *Wierdsma*, *Sharsmith* and the cases cited therein make clear, the duty that may give rise to liability is a duty that grows out of the hospital's unique responsibility for its patients.

> Having undertaken one of mankind's most critically important and delicate fields of endeavor, concomitantly therewith **the hospital must assume the grave responsibility of pursuing this calling with due care**. The care and service dispensed through this high trust, however technical, complex and esoteric its character may be, must meet standards of responsibility commensurate with the undertaking to preserve and protect the health, and indeed, the very lives of those placed in the hospital's keeping.

Id., quoting *Beeck v. Tuscon General Hospital*, 18 Ariz. App. 165, 500 P.2d 1153, 1157 (1972) (emphasis supplied).  The Wyoming Supreme Court has never extended these common law

duties over the credentialing or supervision of physicians to any person or entity other than a hospital.

## 2.  No Statutory Duty Exists

Second, Plaintiff has not alleged that HealthTech or Patten owed her any duty under any Wyoming statute.  In fact, the statutes of Wyoming reflect and reinforce the principle that the duty to supervise, monitor, credential and otherwise oversee the medical practice of physicians on a hospital medical staff has been committed to the hospital's governing board. Since 1989, quality management functions for health care facilities such as PVHC have been controlled by W.S. § 35-2-910. This statute, in pertinent part, provides:

**35-2-910.    Quality management functions for health care facilities; confidentiality; immunity; whistle blowing; peer review.**

(a)    Each licensee shall implement a quality management function to evaluate and improve patient and resident care and services in accordance with rules and regulations promulgated by the division. . . .

. . .

(c)    No hospital shall be issued a license or have its license renewed unless it provides for the review of professional practices in the hospital for the purpose of reducing morbidity and morality and for the improvement of the care of patients in the hospital. This review shall include, but not be limited to:

(i)    The quality and necessity of the care provided to patients as rendered in the hospital;

(ii)    The prevention of complications and deaths occurring in the hospital;

(iii)    The review of medical treatments and diagnostic and surgical procedures in order to ensure safe and adequate treatment of patients in the hospital; and

(iv)    The evaluation of medical and health care services and the qualifications and professional competence of persons performing or seeking to perform those services.

**(d)  The review required in subsection (c) of this section shall be performed according to the decision of a hospital's governing board by:**

    **(i)**    **A peer review committee appointed by the organized medical staff of the hospital;**

    **(ii)**    **A state, local or specialty medical society; or**

    **(iii)**    **Any other organization of physicians established pursuant to state or federal law and engaged by the hospital for purposes of subsection (c) of this section.**

(Emphasis supplied.)

The wording of W.S. § 35-2-910 is clear, unambiguous and directly on point.  Subsection (a) of the statute requires every licensee to implement quality management functions to evaluate and improve its services in the areas of patient and resident care.  Subsection (c) of the statute makes a hospital's licensing dependent on its having a policy in place whereby every aspect of its "professional practices" are reviewed for the purposes of "reducing morbidity and mortality and for the improvement of the care of patients in the hospital."  The duty to discharge these responsibilities rests with the hospital, not with any other entity.  The scope of responsibility assigned to hospitals under subsection (c) is, by its own wording, "not limited to" the specific items set forth in paragraphs (i) through (iv). However, even if it were, paragraphs (i) through (iv), in and of themselves, clearly cover each and every alleged breach of duty that has been asserted against HealthTech and Patten in Plaintiff's Third Cause of Action.  *See Amended Complaint at ¶¶ 64-70.*  In each and every case, the legislature has placed these responsibilities and any attendant duties **exclusively** into the hands of the hospitals and their governing boards.

In subsection (d) the Wyoming legislature has specified the means by which a hospital can discharge its duty to maintain appropriate standards of quality assurance and professional competence.  This portion of the statute only gives the hospital's governing board a limited

authority to delegate its corporate duties.   The hospital's duty of quality management of medical care can be delegated by the hospital's governing board only to those committees, societies, and organizations set forth in Subsection (d)(1) through (iii) of the statute.   Neither HealthTech nor Patten is a "peer review committee," a "state, local or specialty medical society" or an organization of physicians."   Accordingly, PVHC could not delegate its authority over these matters to HealthTech or Patten, even if it had wanted to do so.[3]

### 3.      No Contractual Duty Exists

Finally, while the Amended Complaint does identify, cite and make specific reference to the Contract between PVHC and HealthTech, Plaintiff's allegations of duty are contradicted by the plain and unambiguous terms of the Contract itself.   Plaintiff's Amended Complaint does not satisfy the requirements of *Iqbal* and *Twombly*.   Legal conclusions are not well-pleaded facts, when they conflict with the relevant terms of the Contract identified in a plaintiff's complaint. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal, supra,* 556 U.S. at 679.

The HealthTech/PVHC Contract contains express language that precludes HealthTech from exercising any control over matters relating to the exercise of medical judgment by the professional staff.    The Contract expressly states, "that [HealthTech]'s supervisory and management authority **shall not extend to any aspect of such employees' professional medical judgment or medical actions**." *Contract, Exhibit A at ¶ 1.2.1(a) (emphasis supplied)*.

---

[3] The Court may also take notice of related federal regulations, which govern the organizational structure of Critical Access Hospitals ("CAH"), such as PVHC. A CAH cannot maintain enrollment in Medicare, unless it complies with the Conditions of Participation mandated by the applicable federal regulations. See 42 CFR Part 485, Subpart F. Pursuant to 42 CFR Part 485.627, the CAH must have one governing body or individual, who will address credentialing and appointment of the medical staff and quality of care issues in accordance with state law.

Although previously noted, it is worth reiterating the specific language of the Contract regarding the parties' relative responsibilities for medical judgments, credentialing and other issues relating to the competency and supervision of the medical staff.

> All matters requiring professional medical judgment shall remain the sole responsibility of Hospital's medical staff, nurses, and allied health professionals. **[HealthTech], its employees, and contractors shall have no responsibility, control over, or liability for such medical judgments and [HealthTech] shall not in any way be responsible for the credentialing of any healthcare professionals on staff at the Hospital.** [HealthTech] may rely on the recommendations of the Hospital's medical staff and its designated committees and department chairmen relative to the quality of professional services provided by individuals with clinical privileges and on recommendations of the Board and the medical staff or any jointly appointed or Board appointed committee or representative as to the adequacy and proper state of repair of all medical equipment and the professional competency, training and requisite supervision of nurses, medical technicians and other allied health professionals and medical staff.

*Id., at ¶ 3.2 (emphasis supplied).* These provisions are unambiguous. The responsibility for overseeing the medical judgment and medical practice of the hospital medical staff is retained by the hospital. HealthTech and its employees, such as Patten, are not responsible for the credentialing of physicians, such as Dr. Hansen. HealthTech and Patten are not responsible to assess or exercise authority over the professional competency, training and supervision of the medical staff. These provisions are fully consistent with the common law duties of a hospital as well as with the terms of the Wyoming statutes, which have been discussed earlier. Under the clear terms of the Contract neither HealthTech nor Patten assumed or received any contractual authority or responsibility over credentialing, privileging, quality assurance, training, licensing of the professional staff, including but not limited to Hansen.

The only source of any alleged duty contained in the Amended Complaint is the Contract between HealthTech and PVHC. *Amended Complaint at ¶¶ 45-46.* Plaintiff cannot ignore the terms of that Contract. She cannot rely upon bare conclusory allegations that HealthTech and

Patten had duties to monitor, review and oversee the credentialing, supervising, disciplining, monitoring, reviewing, training and extending privileges to Hansen, when those alleged conclusions are contradicted by the Contract itself.   The Tenth Circuit has held, "factual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true."   *GFF Corp. v. Associated Wholesale Grocers, supra*, 130 F.3d at 1385.   The Wyoming Supreme Court has applied the same principles, when it affirmed the trial court's dismissal of plaintiff's complaint in *Rehnberg v. Hirsberg*, *supra*.   In *Rehnberg*, the plaintiff alleged that the defendant had breached contractual duties, but an examination of the contract itself contradicted the allegations of duty.   "The question then is whether the unambiguous language of the sale contract created any of the duties alleged by Rehnberg. Clearly, it did not."   *Id*, 64 P.3d at 120.   Since the contract did not create the duties upon which the complaint rested, the order granting dismissal was affirmed. *Id*.

The District Court for the Fifth Judicial District, County of Park, State of Wyoming, has recently addressed this issue in the context of a very similar case.   In *Stambaugh v. HealthTech Management Services, Inc*., et al., Civil No. 277758, plaintiffs sued HealthTech, PVHC and Powell Hospital District for damages allegedly caused by the medical negligence of Dr. Hansen. The claims against HealthTech included claims that HealthTech had negligently hired, retained and credentialed Dr. Hansen, which were substantially similar to the claims asserted in this case. The plaintiffs relied upon and attached to their Complaint a copy of the same 2010 Contract that the Plaintiff Oliver has cited in the Amended Complaint.   HealthTech filed a Rule 12(b)(6) motion to dismiss, arguing the specific language contained in the Contract between HealthTech and PVHC precluded any such duties.   On January 14, 2015 the District Court issued its decision letter holding that the claims against HealthTech should be dismissed for failure to state a claim.

A copy of the decision letter is attached to the Motion to Dismiss as Exhibit B.  The District Court specifically considered the same provisions of the Contract, which HealthTech and Patten have cited in this memorandum.  *Exhibit B at 7*.  The District Court found that these terms of the Contract were clear and unambiguous.  *Id*.  The District Court then concluded:

> **The Court agrees with HealthTech that they never assumed or received any authority or responsibility over credentialing, privileging, quality assurance, training and licensing of the professional staff.**  The Court finds the facts asserted by the Plaintiffs in the Complaint do not entitle them to relief because no duty arose from those claims under the Agreement.

*Id. at 7-8* (emphasis supplied).  The analysis applied in *Stambaugh* should apply with equal force to the claims asserted against HealthTech and Patten in this case.   Moreover, that analysis should lead this Court to reach the same conclusion.  Under the terms of the Contract HealthTech and Patten did not owe Plaintiff Oliver any duty of care regarding the credentialing, monitoring or supervision of the medical care provided by Dr. Hansen.   Accordingly, the claims against HealthTech and its employee, Patten, should be dismissed.

## V.     CONCLUSION

Plaintiff has not alleged any factual basis to support her claim that HealthTech or Patten owed her a legal duty.  There is no such common law duty.  There is no such statutory duty.  Nor is there any duty owed under the terms of the Contract between HealthTech and PVHC.  Plaintiff has failed to present anything more than unsupported legal conclusions and, in fact, her alleged conclusions are unsupported and contradicted by the express terms of the actual Contract identified in her Amended Complaint.  In the absence of any well-pleaded factual allegations that could give rise to a legal duty, the claims against HealthTech and Patten must be dismissed.

Dated this _27th_ day of January 2015.

Paul Kapp #5-2267
George E. Powers, Jr. #5-2062
Sundahl, Powers, Kapp & Martin, LLC
1725 Carey Avenue (82001)
P.O. Box 328
Cheyenne, WY  82003-0328
(307) 632-6421
*Attorneys for Health Tech Management*
*Services, Inc. and William D. Patten*

## CERTIFICATE OF SERVICE

I certify the foregoing pleading was served on this 27th day of January 2015, and that copies were served as follows:

Robert A. Krause,                                [_____] U.S. Mail
Mel C. Orchard, III,                             [__X__] Electronically
Elizabeth A. Richards,                           [_____] Fax
Sarah A. Kellogg                                 [_____] Hand Delivered
The Spence Law Firm, LLC
15 S. Jackson Street
PO Box 548
Jackson, WY 83001

William L. Simpson                               [_____] U.S. Mail
Larry B. Jones                                   [__X__] Electronically
Colin M. Simpson                                 [_____] Fax
Burg, Simpson, Eldredge, Hersh & Jardine, PC     [_____] Hand Delivered
1135 14th Street
P.O. Box 490
Cody, WY 82414

Brian J. Marvel/ Scott E. Ortiz                  [_____] U.S. Mail
Williams, Porter, Day & Neville, P.C.            [__X__] Electronically
P.O. Box 10700                                   [_____] Fax
Casper, WY 82602                                 [_____] Hand Delivered

Christopher Voigt                                [_____] U.S. Mail
Eric Peterson                                    [__X__] Electronically
Crowley Fleck, P.L.L.P.                          [_____] Fax
490 N. 31st Street, Suite 500                    [_____] Hand Delivered
Billings, MT 59101

_____
George E. Powers, Jr.